**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**JASON EDWARDS**                                                                      **PLAINTIFF**

**V.**                       **CASE NO.: 2:10CV00053 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                            **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jason Edwards appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security income ("SSI") under Title XVI of the Act. For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.**     **Procedural History and Background:**

On November 9, 2005, Mr. Edwards protectively filed for DIB and SSI benefits claiming disability due to a broken hip and pelvis. (Tr. 37, 47-49, 277) Mr. Edwards claims an onset date of May 19, 2005, and he met the insured status requirements through December 31, 2009. (Tr. 10, 37)

Mr. Edward's claim was denied initially and upon reconsideration. (Tr. 23-24, 259-260) At his request, an Administrative Law Judge ("ALJ")[1] held a hearing on August

---

[1]The Honorable Troy M. Patterson.

28, 2007, at which Mr. Edwards appeared with his attorney and testified. (Tr. 280-300) A vocational expert also testified at the hearing. (Tr. 295-298)

The ALJ issued a decision on November 29, 2007, finding that Mr. Edwards was not disabled for purposes of the Act. (Tr. 9-14) On March 25, 2010, the Appeals Council denied his request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 2-4)

Mr. Edwards was twenty-seven years old at the time of the hearing. (Tr. 284) He had a high school diploma and past relevant work as an account manager, flagger, and assembler. (Tr. 12, 285) At the time of the hearing, Mr. Edwards was living with his wife. (Tr. 284)

## II. Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from

---

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. § 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g); 416.920(a)-(g).

The ALJ found that Mr. Edwards had not engaged in substantial gainful activity since his alleged onset date. (Tr. 13) He found that Mr. Edwards had the following severe impairments: degenerative joint disease of the hip and pelvis, status-post acetabulum fracture, morbid obesity, and hypertension. (Tr. 13) He found that Mr. Edwards did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526, 416.926). (Tr. 13)

The ALJ determined Mr. Edwards had the residual functional capacity to perform sedentary work with the additional limitation that he would need to have a sit/stand option. (Tr. 14, 297) He found that Mr. Edwards could not return to his past relevant work. (Tr. 14) He found, based on the testimony of a vocational expert, that Mr. Edwards could perform jobs that exist in significant numbers in the economy, such as work as a cashier. (Tr. 14)

III. <u>Analysis</u>:

   A.   *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence on the record as a whole to support the decision. *Johnson v. Astrue*, 627 F.3d 316, 319 (8th Cir. 2010); 42 U.S.C. § 405(g). Substantial evidence is

"less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

Mr. Edwards claims the findings of the ALJ are not supported by substantial evidence because: (1) the ALJ did not properly consider his obesity in assessing his residual functional capacity ("RFC") or his hypothetical questions to the vocational expert; and (2) the ALJ erred in his credibility analysis. (#11 at pp. 9, 15)

    B.    *Residual Functional Capacity*

Mr. Edwards claims the ALJ did not "contemplate the difficulties Plaintiff would have due, in large part, to his morbid obesity." (#11 at p.11) Mr. Edwards claims that because of his obesity, degenerative arthritis in his knee, and residual effects of his acetabulum fracture, he would have difficulty standing, squatting, climbing, kneeling, and lifting. (#11 at pp. 12-13) Mr. Edwards claims the ALJ did not properly assess the effect of these limitations when determining his residual functional capacity.

The ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959,

969 (8th Cir. 2010) (citations omitted). A claimant's RFC is a medical question and "at least some" medical evidence must support the ALJ's RFC determination. *Id*.

In this case, the ALJ thoroughly discussed the entire record, including Plaintiff's obesity, when analyzing Mr. Edwards's RFC. He reviewed the medical records from Mr. Edwards's right acetabelum fracture in 2005. (Tr. 10) He noted that because of Mr. Edwards's obesity, he was treated non-operatively with six weeks of skeletal traction and physical therapy. (Tr. 229)

After Mr. Edwards was released from the hospital, Mark S. Harriman, M.D., an orthopaedic specialist, began treating him. He noted that Mr. Edwards had a "very significant acetabular injury." (Tr. 252) He recommended physical therapy to increase range of motion and pain medication. A month later, Dr. Harriman saw Mr. Edwards and noted that he could begin to "progressively weight bear." (Tr. 250) He stated Mr. Edwards could perform sedentary work, if available. (Tr. 250)

A month later, Dr. Harriman examined Mr. Edwards again and noted that his right hip fracture had stabilized, but that he had developed degenerative joint disease in his right knee due to his obesity. He noted that at some point in the future Mr. Edwards would likely need a hip replacement, but he would need to lose 200 pounds before anyone would consider doing the surgery. (Tr. 249) Dr. Harriman stated Mr. Edwards's "work status is sedentary at this point, essentially 25% standing and walking, 75% sitting. He should not climb, kneel or squat or do any appreciable lifting." (Tr. 249)

5

On October 4, 2005, Dr. Harriman again examined Mr. Edwards and stated he believed that Mr. Edwards was at maximum medical improvement. (Tr. 248) He stated Mr. Edwards's gait had improved and his pain was tolerable. He noted again that he expected deterioration of the hip over time. (Tr. 248) He stated "weight loss should be an extremely important component of this man's long term care and any help in this regard would be beneficial to him." (Tr. 248) Dr. Harriman discharged Mr. Edwards to "permanent light duty work." (Tr. 248) He recommended that Mr. Edwards could spend 25% of his day standing or walking and 75% of his day sedentary. (Tr. 248) Again, he recommended that Mr. Edwards not climb, kneel, or squat, and he also recommended that Mr. Edwards would not be effective doing any kind of regular lifting. (Tr. 247-48)

Dr. Harriman examined Mr. Edwards again on January 23, 2007. (Tr. 136) At that time, Mr. Edwards weighed 430 pounds and had not lost any weight. (Tr. 135) Dr. Harriman noted that Mr. Edwards "certainly walks better" and his gait had improved from when he had last seen him. (Tr. 135-36) He reviewed x-rays of Mr. Edwards's pelvis, which showed a healed acetabular fracture with irregularity of the joint; x-rays of the right tibial region which showed that he had "completely healed" in the area of his traction pin. (Tr. 136) Dr. Harriman stated that Mr. Edwards's symptoms were probably due to posttraumatic degenerative joint disease. (Tr. 136) He prescribed Mobic to help him with his arthritis pain, but he did not believe Mr. Edwards's leg required treatment.

(Tr. 137) Finally, Dr. Harriman stated Mr. Edwards's work status was "sedentary." (Tr. 137)

Mr. Edwards points out that Social Security Ruling 00-3p provides, "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." Dr. Harriman, Mr. Edwards's treating physician, had a full understanding of Mr. Edwards's morbid obesity and his complaints of pain, but he did not find that Mr. Edwards was restricted from working. Instead, he repeatedly found that Mr. Edwards was capable of performing sedentary work. (Tr. 137, 247-50) The ALJ appropriately gave substantial weight to Mr. Edwards's treating physician's opinion. See *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004)(rejecting claimant's argument that ALJ erred by failing to consider his obesity because none of his treating physicians, after noting his obesity, had imposed work-related limitations on the claimant).

The ALJ also considered Mr. Edwards's testimony that he could engage in a variety of sedentary activities including, socializing with others several times per week, paying bills, handling a checking account, playing video games, and shopping several times per week. (Tr. 11, 78-79) The ALJ's determination that Mr. Edwards has the RFC to do sedentary work with a sit/stand option is supported by substantial evidence in the record.

C.   *The Hypothetical*s

In his first hypothetical, the ALJ described an individual the same age, education, and work experience as Mr. Edwards, with the RFC for sedentary work with the additional limitation of a sit/stand option. (Tr. 297) The vocational expert testified that a person with those restrictions could perform work that existed in the local and national economy; specifically, he suggested the job of cashier. (Tr. 297) The vocational expert also noted that there were jobs available as assemblers and automatic machine operators production line workers with a sit/stand option. (Tr. 297-98)

In his second hypothetical the ALJ asked about an individual with the same restrictions as in the first hypothetical, but who had the added restriction of being unable to sustain work activity for a full eight-hour day on a regular and consistent basis. (Tr. 298) The vocational expert testified that this person could not perform work in the national or local economy. (Tr. 298)

Mr. Edwards claims the ALJ erred by not asking a hypothetical question that included his limited ability to squat, climb, kneel, and lift. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). "Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or

8

crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

The ALJ noted that Plaintiff's hip and pelvis significantly affected Mr. Edwards's ability to stand and walk, and his use of a cane affected his ability to lift and carry. However, the ALJ also notes that Dr. Harriman was aware of all of these limitations and still found that Mr. Edwards was capable of sedentary work.

As set forth above, the RFC assessed by the ALJ, sedentary with a sit/stand option, appropriately reflected the limitations of Mr. Edwards that were supported by the record. Accordingly, the vocational expert's testimony that an individual with Mr. Edwards's limitations could perform work as a cashier and that job exists in the local and national economy is substantial evidence supporting the ALJ's conclusion that Mr. Edwards was not disabled within the meaning of the Act.[3]

D.    *Subjective Complaints of Pain*

Finally, Mr. Edwards claims the ALJ improperly analyzed his subjective complaints of disabling pain. The ALJ need not explicitly discuss each *Polaski* factor; rather, it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009)

---

[3]The description for the cashier job of "food checker" in the Dictionary of Occupational Titles provides that the job does not require climbing, balancing, stooping, kneeling, crawling, and crouching.

9

(quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)).  This Court may not disturb the credibility decision of an ALJ who considers, but for good cause discredits, a claimant's complaints of pain.  See *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (citations omitted).

Here, the ALJ made express credibility findings and gave reasons for discrediting the Plaintiff's testimony.  See *e.g. Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).  The ALJ properly assessed Mr. Edwards's subjective complaints in light of the factors set out in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984). (Tr. 11)  He considered Mr. Edwards's work history, his activities of daily living, his medications, and the observations of his treating and examining physicians.

One of the factors the ALJ considered was Mr. Edwards's non-compliance with treatment.  The ALJ noted that Mr. Edwards had been advised by his doctors to lose weight both for his hip and for his hypertension.  Glenn Loveday, M.D., at the Wynn Health Center noted on August 22, 2006, however, that Mr. Edwards paid little attention to the dietary restrictions and exercise program he prescribed to assist him with weight loss. (Tr. 11, 145)  Additionally, Mr. Edwards continued to smoke cigarettes, which negatively affected his hypertension. (Tr. 11, 145)  See *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (failure to follow a recommended course of treatment weighs against a claimant's credibility).

10

In his brief, Mr. Edwards argues that his failure to comply with his physicians' orders to lose weight should not be considered non-compliance with treatment, because there is "no evidence she [sic] can lose weight." (#11 at p. 16)  The record indicates, however, that Mr. Edwards was capable of losing weight.  At the hearing, Mr. Edwards testified that while in the hospital and on a restricted diet, his weight dropped to 330 pounds.  (Tr. 286)  That is 120 pounds less than the 450 to 460 pounds that he testified to weighing at the hearing.  (Tr. 285)

Mr. Edwards's complaints of disabling pain are also contrary to the objective medical evidence.  The medical records indicate that his hip and pelvis did not require further treatment, and he did not require narcotic medication for pain relief. (Tr. 135-37, 291)  Further, Mr. Edwards testified at the hearing that sitting in a hot bathtub and using "Icy Hot" or a heating pad at home gave him relief from pain he might experience if working.  (Tr. 290)

The ALJ analyzed the factors set forth in *Polaski* and appropriately evaluated Mr. Edwards's credibility under the applicable standard.  After reviewing the record, there is substantial evidence to support the ALJ's conclusion that Mr. Edwards's subjective allegations were not "fully credible."  (Tr. 11)

## IV.   Conclusion:

There is sufficient evidence in the record as a whole to support the Commissioner's determination that Jason Edwards was not disabled within the meaning

of the Act. Accordingly, his appeal is DENIED, and the Clerk is directed to close the case, this 15th day of April, 2011.

_____
UNITED STATES MAGISTRATE JUDGE